# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# JACKSON DIVISION

**KEITH BASKIN**                                                                        **PETITIONER**

**VERSUS**                                        **CIVIL ACTION NO. 3:09CV551 CWR-LRA**

**DANNY SCOTT**                                                             **RESPONDENT**

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner Keith Baskin was convicted in the Circuit Court of Madison County, Mississippi, and seeks federal habeas relief under 28 U.S.C. § 2254. After review of the entire record, the undersigned recommends his petition be dismissed with prejudice.

## Factual and Procedural Background

Baskin was convicted of possession of marijuana with intent to sell and was sentenced under Mississippi's habitual offender statute to 60 years without parole. The relevant facts are described in more detail in the state court's opinion as follows:

> On the night of January 2, 2004, Keith Baskin was a passenger in a car driven by Dacorious Clark, and they were traveling north on Highway 49. The Mississippi Highway Patrol was conducting a safety checkpoint north of the Flora city limits on Highway 49. As Clark approached the checkpoint, he accelerated his car and struck the approaching officer, Master Sergeant Bradley, in the arm, then sped away. Sergeant Bradley and Trooper Steve Shows gave chase in their patrol cars, and noticed Baskin throwing bags out of the open passenger side of Clark's vehicle. Eventually, the car was stopped and the occupants were arrested. While Clark resisted arrest, Baskin was cooperative with law enforcement. During the short chase, Trooper Shows retrieved a bag containing 450.6 grams of marijuana, which had been thrown out of the moving vehicle by Baskin.

*Baskin v. State*, 986 So.2d 338, 340 (Miss. Ct. App. 2008), reh'g denied, May 6, 2008, cert. denied, July 17, 2008. Baskin was charged in the initial indictment with possession

with intent to distribute a controlled substance in violation of Miss. Code Ann. § 41-29-139(b)(1). On the day of the trial, the prosecution moved to amend the indictment to charge Baskin as a subsequent offender under Miss. Code Ann. § 41-29-147 after learning that he had a previous drug conviction. The motion was granted that day.[1] After trial, but prior to sentencing, the prosecution moved to amend the indictment to charge Baskin as a habitual offender under Miss. Code Ann. § 99-19-81 after pre-sentence investigation revealed that he had a second drug conviction. The motion was granted and Baskin was sentenced as a habitual offender to the maximum term of 60 years in the custody of the Mississippi Department of Corrections.[2] Baskin's subsequent motion for new trial was denied. Aggrieved, he appealed and asserted as grounds for relief the same issues raised in the instant petition:

1. The State did not put forth any evidence to prove that Mr. Baskin intended to sell a controlled substance, therefore the trial court erred by refusing to grant a motion for a directed verdict at the close of the state's case and erred by refusing to set aside the guilty verdict or grant a new trial based on the fact that there was insufficient evidence to prove any intent to sell.

2. The trial court violated Mr. Baskin's Eighth Amendment rights by sentencing him to a grossly disproportionate sentence in comparison to the offense.

3. Allowing the state to amend its indictment after the jury verdict and before sentencing violated Mr. Baskin's fundamental Sixth and Fourteenth amendment rights.[3]

---

[1]ECF No. 7-2, pp. 51-52.

[2]ECF No. 7-2, pp. 155-63.

[3]ECF No. 7-3.

2

The Mississippi Court of Appeals affirmed Baskin's conviction and sentence in a written opinion on January 8, 2008. *Id.* A petition for rehearing and writ of certiorari were subsequently denied in May and July 2008. In September 2009, Baskin filed the instant petition for federal habeas relief which is now ripe for review.

## Standard of Review

This Court's review of Petitioner's claims for federal habeas relief is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996. Under the Act, this Court cannot grant a petitioner federal habeas corpus relief for any claim that was adjudicated on the merits in a state court proceeding, unless the adjudication:

(1) resulted in a decision that was **contrary to, or involved an unreasonable application of, clearly established Federal law**, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an **unreasonable determination of the facts in light of the evidence** presented in the State court proceeding.

(Emphasis added) 28 U.S.C. § 2254(d).

Under the first prong, the clauses "contrary to" and "unreasonable application of" are independent bases for granting federal habeas relief. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court's decision is "contrary to" federal law if it contradicts Supreme Court precedent or reaches a different result on materially indistinguishable facts. *Id*. Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court "correctly identifies the governing legal principle" but then "unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685,

3

694 (2002). The state court's decision must be objectively unreasonable, not merely erroneous or incorrect. *Rompilla v. Beard*, 545 U.S. 374, 380 (2005).

AEDPA's second prong requires that federal courts defer to a state court's factual determinations unless it is based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Deference is critical because federal courts have no authority to grant habeas corpus relief simply because "we conclude, in our independent judgment, that a state supreme court's application of [federal] law is erroneous or incorrect." *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002). Thus, we presume the state court's determination of a factual issue is correct, unless a petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. §2254 (e)(1).

## Discussion

**Ground One: Verdict Against the Weight and Sufficiency of the Evidence**

In ground one, Baskin asserts the trial court erred in denying his motion for new trial and directed verdict, and challenges both the weight and sufficiency of the evidence supporting his conviction. Unlike a sufficiency of the evidence claim, a weight of the evidence claim requires an assessment of the credibility of the evidence presented at trial. *Tibbs v. Florida*, 457 U.S. 31, 37-38 (1982). It is purely a matter of state law and is not cognizable on habeas review. *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985)( "[a] federal habeas court has no power to grant habeas corpus relief because it finds that the

4

state conviction is against the 'weight' of the evidence . . ."). Conversely, a sufficiency of the evidence claim is based upon federal due process principles, and habeas relief will be granted only if the evidence, when viewed in the light most favorable to the State, is such that no rational trier of fact "could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard of review "preserves the integrity of the trier of fact as the weigher of the evidence." *Bujol v. Cain*, 713 F.2d 112, 115 (5th Cir. 1983).

In rejecting Baskin's sufficiency of the evidence claim on direct appeal, the Mississippi Court of Appeals made the following findings:

> In the case *sub judice,* the record reflects that Trooper Steve Shows testified that the passenger in the car, Baskin, opened the door and began throwing what appeared to be bags out onto the highway. Trooper Shows further testified that he was able to retrieve the last bag that was thrown from the retreating car. Trooper Shows testified that large chunks of marijuana were scattered on the floor board, on and behind the passenger seat, and on the car floor.
>
> Sergeant Bradley testified that there was marijuana residue in the car, as well as marijuana in the bag which was tossed out of the moving vehicle. Sergeant Bradley also testified there were multiple bags being thrown out of the vehicle at the time of the chase and subsequent arrest. Here, there was testimony at trial that the amount in the bag was more than a single person would generally have for personal consumption.
>
> Testimony from Archie Nichols, a chemical analyst from the Mississippi Crime Lab, opined that the bag of marijuana retrieved by officers would easily make anywhere from 450 to 900 marijuana cigarettes. This testimony supports the State's argument that Baskin had sufficient intent to distribute. Nichols testified that he deals with marijuana on a daily basis and examines marijuana joints routinely.
>
> Further, testimony from the arresting officers in pursuit of the fleeing vehicle established that there appeared to be multiple bags being thrown out of the vehicle and a large amount of marijuana residue was discovered in the vehicle.

*Baskin*, 986 So.2d at 341-42. Where, as here, "a state appellate court has conducted a thoughtful review of the evidence," its determination of the sufficiency of the evidence "is entitled to great deference." *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993). In recent decisions, the Supreme Court has stressed the high level of deference that must be afforded to state court decisions. *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011); *Premo v. Moore*, 131 S.Ct. 733 (2011). It has counseled us that "[s]ection 2254(d) is designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." *Richter*, 131 S.Ct at 788. This high bar "ensure[s] that state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding." *Id*. at 787 (citing *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977)).

In this case, the state court found the evidence was more than sufficient to support the jury's verdict that Baskin had the intent to sell marijuana, and Baskin has presented nothing in his habeas petition to overcome the deference afforded the state court's decision.

**Ground Two: Sentence Imposed Was Grossly Disproportionate to Crime**

In ground two, Baskin asserts that he is entitled to habeas relief because his 60-year sentence is grossly disproportionate to his crime, in violation of the Eighth Amendment. He complains that his co-defendant pled guilty and was sentenced to a lesser term, while he was given an enhanced sentenced based on his two prior felony convictions. Baskin raised this claim on direct appeal and the Mississippi Court of

6

Appeals rejected it on its merits. This court considers only whether that rejection was contrary to an unreasonable application of federal law. *Richter*, 131 S.Ct. at 786 (decision not objectively unreasonable if "'fairminded jurists could disagree' on the correctness of the state court's decision").

In considering this claim, the Mississippi Court of Appeals observed that Baskin had a "persistent history of crimes involving the possession or sale of a controlled substance." *Baskin*, 986 So.2d 343. He was convicted in 1994 of selling a controlled substance and was sentenced to ten years, and was sentenced again in 2000, for possession of a controlled substance. Relying on a series of United States Supreme Court precedent -- *Rummel v. Estelle,* 445 U.S. 263 (1980) (life sentence for passing bad checks and misusing credit cards not grossly disproportionate to crime), *Solem v. Helm*, 463 U.S. 277 (1983) (life sentence for passing bad checks grossly disproportionate to crime), and *Harmelin v. Michigan,* 501 U.S. 957 (1991) (life sentence without the possibility of parole for defendant convicted of possessing 650 grams of cocaine with no prior felony convictions not grossly disproportionate ) -- the state court found that Baskin's sentence was neither grossly disproportionate nor cruel or unusual.

The United States Supreme Court has observed that "our precedents in this area have not been a model of clarity" and that "we have not established a clear or consistent path for courts to follow." *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003) The Court has acknowledged that "the only relevant clearly established law amenable to the 'contrary

7

to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme case.'" *Id*. at 73. But the Court has made clear that when conducting a gross disproportionality review, "we must place on the scales not only [petitioner's] current felony, but also his long history of felony recidivism. Any other approach would fail to accord proper deference to the policy judgments that find expression in the legislature's choice of sanctions." *Ewing v. California*, 538 U.S. 11, 29 (2003). The Court has explained:

> The purpose of a recidivist statute such as that involved here is not to simplify the task of prosecutors, judges, or juries. Its primary goals are to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time. This segregation and its duration are based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes. . . . [T]he point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction.

*Rummel*, 445 U.S. at 284-85. Contrary to petitioner's suggestion in this case, the grossly disproportionate sentencing analysis is not limited to the proportionality of the triggering conviction to the resulting sentence. His entire criminal history was considered and deference must be given to the State's legislative intent.

Baskin does not deny his prior convictions or dispute that his punishment was within state statutory limits. *Long v. Sparkman,* No. 3:11CV29, 2011 WL 4386387 (N.D. Miss. Sept. 20, 2011) ("Habeas corpus relief is proper only if a petitioner is able to

8

show that the sentence imposed 'exceeds or is outside the statutory limits, or is wholly unauthorized by law.'") (quoting *Haynes v. Butler*, 825 F.2d 921, 923 (5th Cir. 1987)). As a subsequent and habitual drug offender, his sentence was subject to enhancement under Miss. Code Ann. § 41-29-147 and § 99-19-81. Though he complains his co-defendant was sentenced to a lesser term for pleading guilty, "Baskin was aware of his own criminal history and chose to proceed to trial." *Baskin,* 986 So.2d at 343.

This case is nearly indistinguishable from *Tate v. Kelly*, No. 4:08CV9, 2011 WL 1103769 (S.D. Miss. March 23, 2011). Like Baskin, Tate was sentenced under Mississippi's recidivist statute to 60 years without parole for his third drug offense and claimed he was entitled to federal habeas relief because the sentence was grossly disproportionate to his crime. As in *Tate*, this Court finds that while "'fairminded jurists could disagree' on the correctness of the state court's decision," given the "'uncertainty among our country's highest jurists," the Mississippi Court of Appeals was not objectively unreasonable in affirming Baskin's sentence. *Id*. at \*3. *See also Miles v. Bradley*, No. 2:04 CV349, 2007 WL 1223557 (N.D. Miss. Apr. 25, 2007) (law of gross proportionality not clearly established, thus Mississippi state courts did not unreasonably apply clearly established federal law in sentencing petitioner as a habitual offender to life without parole for forgery). His sentence was within State statutory limits and was not contrary to clearly established federal law.

9

**Ground Three:** Trial Court Erred in Amending Indictment After Trial and Before Sentencing

Baskin asserts the trial court erred by allowing the prosecutor to amend the indictment to charge him as a habitual offender under Miss. Code Ann. § 99-19-81, after the verdict, but prior to sentencing. He contends that the prosecutor's decision to amend was in retaliation for his refusal to plead guilty, and tantamount to vindictive prosecution. Whether an indictment was properly amended is a matter of state law, not federal law. *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir.1985) (sufficiency of indictment can only be determined by looking to the law of the state where the indictment was issued); *See also Jones v. Waller,* No.1:06CV21, 2007 WL 1826904 at *4 (N.D. Miss. May 30, 2007) (claim that indictment amended to include habitual offender language involved interpretation of state law, and was not subject to federal habeas review). Mississippi law has long provided that indictments may be amended to include habitual offender allegations. *See* Rule 7.09 of the Mississippi Uniform Circuit and County Rules (URCCC). The amendment was proper here because under state law, "prior offenses used to charge the defendant as an habitual offender are not substantive elements of the offense charged." *Baskin*, 986 So.2d at 344 (quoting *Shumaker v. State*, 956 So.2d 1078, 1087 (Miss. Ct. App. 2007). The court explained that:

> The test for whether an amendment to the indictment will prejudice the defense is whether the defense as it originally stood would be equally available after the amendment is made. Here, Baskin was advised, prior to trial, of the consequences of going to trial and receiving a guilty verdict in light of his past criminal history. From our reading of the record, this court

> cannot find that Baskin was prejudiced by the change in the indictment, since he was already advised of the risk of proceeding to trial, and was aware of both of his previous convictions.

*Id*. (internal quotations and citations omitted).

Baskin's vindictive prosecution claim is also without merit. A vindictive prosecution – one in which the prosecutor seeks to punish the defendant for exercising a protected statutory or constitutional right – violates a defendant's Fifth Amendment right to due process. *United States v. Goodwin*, 457 U.S. 368, 372 (1982). A defendant establishes vindictive prosecution either (1) by producing evidence of actual vindictiveness, or (2) by demonstrating circumstances that reveal a sufficient likelihood of vindictiveness to warrant a presumption of vindictiveness *Id*. at 376. A prosecutor rebuts the presumption by showing objective reasons for the charges. The prosecutor in this case gave the following explanation:

> Your honor, I met with [defense counsel] and Mr. Baskin, prior to trial, and warned him of the consequences of proceeding to trial and received assurance from him that he understood the possible consequences. Although, at that time, I have to tell the Court that I was aware of one prior conviction but doubtless he was aware that he had two prior convictions. And when the field officer did the presentence investigation, in fact, I found that he had, in fact, two prior convictions.
> . . . .
>
> . . . Now, the only thing we have to meet is that it not deprive him of a fair opportunity to present a defense. Well, he had a fair opportunity to present a defense to the substantive offense that was charged. And he, certainly, is not unfairly surprised as he doubtless was present and aware that he had previously been convicted in Bolivar County twice.
> . . . .
>
> And, as I said, Your Honor, I met with [defense counsel] and the defendant. I explained to the defendant that there would be dire consequences if he proceeded to trial and was convicted. At that point, I was discussing the motion to charge as a subsequent offender. But, in no uncertain terms, I was told by the defendant that he understood. And he made a conscious decision

11

to proceed to trial.[4]

The prosecutor clearly explained that the amended indictment was based on evidence unavailable or unknown at the time of the earlier indictments. Thus, even if the court were to find this case presented a reasonable likelihood of vindictiveness, the prosecutor's explanation rebuts the presumption.

Further, while a prosecutor may not punish a defendant for exercising his right to a trial, the mere fact that a prosecutor carries out a threat to re-indict a defendant as a recidivist when he declines to plead guilty is insufficient to establish a due process violation. *Bordenkircher v. Hayes*, 434 U.S. 357 (1978) (finding no due process violation when a state prosecutor carries out a threat made during plea negotiations to have a defendant re-indicted on more serious but plainly viable charges if he does not plead guilty under the original indictment). The Supreme Court has explained that in the give and take of plea bargaining, there is no element of punishment or retaliation "so long as the accused is free to accept or reject the prosecution's offer." *Id.* at 363; *see also Smallwood v. Johnson*, 73 F.3d 1343, 4351 (5th Cir. 1996) ("It is clear that due process is not violated when a state prosecutor exercises his discretion and charges a defendant as a habitual offender for refusing a plea bargain.") (citing *Bordenkircher*, 434 U.S. at 357). In this case, Baskin was free to accept or reject the prosecutor's plea offer and was advised of the consequences he faced if convicted in light of his criminal

---

[4]ECF No. 7-2, pp. 155, 158-59.

12

history. *Baskin*, 986 So.2d at 344. That the evidence supporting a habitual offender charge was not discovered until after the earlier indictments were filed does not warrant a different result. *Goodwin,* 457 U.S. at 382 n. 14. ("To presume that every case is complete at the time an initial charge is filed . . . is to presume that every prosecutor is infallible – an assumption that would ignore the practical restraints imposed by often limited prosecutorial resources.").[5] In the end, the amendment was supported by the evidence and was a charge "on which [Petitioner] was plainly subject to prosecution." *Bordenkircher*, 434 U.S. at 365.

Baskin has not proffered any evidence showing or tending to show that the prosecutor's amendment of the indictment to include a habitual offender allegation resulted from actual vindictiveness. The record is devoid of objective evidence of prosecutorial vindictiveness and, if any presumption of vindictiveness arose, it was rebutted by the State's explanation. The Mississippi Court of Appeals's rejection of this

---

[5] *See also United States v. Gamez-Orduno*, 235 F.3d 453, 462-63 (9th Cir. 2000) (finding no prosecutorial vindictiveness "when increased charges are filed in the routine course of prosecutorial review or as a result of continuing investigation"); *Hardwick v. Doolittle*, 558 F.2d 292, 301 (5th Cir. 1977) (noting that a presumption of vindictiveness can be overcome by showing that it was impossible to bring greater charges earlier or that a mistake or oversight occurred); *United States v. Krezdorn*, 718 F.2d 1360, 1365 (1983) (prosecutor may rebut presumption by establishing "that events occurring since the time of the original charge decision altered that initial exercise of the prosecutor's discretion"); *Raetzsch v. State*, 709 S.W. 2d 39, 41 (Tex. App. – Corpus Christie 1986) (allowing the prosecutor to rebut the presumption of vindictiveness by explaining that new enhancement was based upon State's receipt of defendant's pen-packet, which the State did not have at the time of the first trial); *United States v. King*, 126 F.3d 394, 399 (2nd Cir. 1997) (a prosecutor can rebut the "presumption of vindictiveness . . . with a showing of 'legitimate, articulable, objective reasons' for the superceding indictment").

13

claim was not contrary to or an unreasonable application of clearly established federal law.

## Conclusion

For the reasons discussed herein, the undersigned United States Magistrate Judge recommends that the Petition for Writ of Habeas Corpus be dismissed with prejudice. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009). *Douglas v. United Services Auto. Ass'n.* 79 F.3d 1415, 1428- 29 (5th Cir. 1996).

THIS the 25th day of June, 2012.

/s/Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE